UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Case No. 1:22-cv-3426 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| ANTARES PHARMA, INC., LEONARD S. | : **SECTIONS 14(e), 14(d) AND 20(a) OF** |
| JACOB, M.D., PH.D., THOMAS J. | : **THE SECURITIES EXCHANGE ACT** |
| GARRITY, PETER S. GREENLEAF, | : **OF 1934** |
| ANTON GUETH, ROBERT P. ROCHE, JR., | : |
| KAREN SMITH, CARMEN VOLKART, and | : **JURY TRIAL DEMANDED** |
| ROBERT F. APPLE, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Antares Pharma, Inc. ("Antares Pharma or the "Company") and the members Antares Pharma board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Antares Pharma by affiliates of Halozyme Therapeutics, Inc. ("Halozyme").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on April 26, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Atlas Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Halozyme, will merge with and into Antares Pharma, with Antares Pharma continuing as the surviving corporation and becoming a wholly-owned subsidiary of Halozyme (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated April 12, 2022 (the "Merger Agreement"), each Antares Pharma common share issued and outstanding will be converted into the right to receive: $5.60 in cash (the "Merger Consideration"). In accordance with the Merger Agreement, Merger Sub commenced a tender offer to acquire all of Antares Pharma's outstanding common stock and will expire on May 17, 2022 (the "Tender Offer").

3.      Defendants have now asked Antares Pharma's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Antares Pharma's financial projections relied upon by the Company's financial advisor, Jefferies LLC ("Jefferies") in its financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Jefferies. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Antares Pharma stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Antares Pharma's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company trades on the NASDAQ Capital Market, which is headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Antares Pharma common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Leonard S. Jacob, M.D., Ph.D. has served as a member of the Board since January 2007 and as the Chairman of the Board since October 2008.

11. Individual Defendant Thomas J. Garrity has served as a member of the Board since October 2003.

12. Individual Defendant Peter S. Greenleaf has served as a member of the Board since December 2018.

13. Individual Defendant Anton Gueth has served as a member of the Board since 2003.

14. Individual Defendant Robert P. Roche Jr. has been a member of the Board since 2013.

15. Individual Defendant Karen Smith has served as a member of the Board since 2019.

16. Individual Defendant Carmen Volkart has served as member of the Board since October 2021.

17. Individual Defendant Robert F. Apple has served as a member of the Board since March 2016 and is the Company's President and Chief Executive Officer.

18. Defendant Antares Pharma is incorporated in Delaware and maintains its principal offices at 100 Princeton South, Suite 200, Ewing, NJ 08628. The Company's common stock trades on the NASDAQ Capital Market under the symbol "ATRS."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

21. Antares Pharma, a specialty pharmaceutical company, focuses primarily on the development and commercialization of pharmaceutical products and technologies that address patient needs in targeted therapeutic areas. It develops, manufactures, and commercializes novel

4

therapeutic products using its drug delivery systems. The company's injection products include XYOSTED for subcutaneous administration of testosterone replacement therapy in adult males; OTREXUP a subcutaneous methotrexate injection indicated for adults with severe active rheumatoid arthritis, children with active polyarticular juvenile idiopathic arthritis, and adults with severe recalcitrant psoriasis; and NOCDURNA sublingual tablets indicated for the treatment of nocturia due to nocturnal polyuria in adults who awaken at least two times per night to urinate. Its injection products also comprise generic Epinephrine Injection USP products indicated for emergency treatment of severe allergic reactions, including anaphylaxis in adults and certain pediatric patients; Sumatriptan Injection USP indicated for the acute treatment of migraine headaches and cluster headache in adults; and Makena subcutaneous auto-injector drug-device combination product indicated to reduce the risk of preterm birth in women, as well as Teriparatide injection used for the treatment of osteoporosis in postmenopausal women and men at increased risk of fracture, and glucocorticoid induced osteoporosis in men and women. In addition, the company develops disposable pen injectors for diabetes and osteoporosis; QuickShot auto-injectors; TLANDO to treat deficiency or absence of endogenous testosterone in adult males; and drug/device products for urologic oncology, immunology, and endocrinology. The company has strategic alliances and partnerships with Pfizer Inc., Idorsia Pharmaceuticals Ltd, Teva Pharmaceutical Industries, Ltd, and AMAG. Antares Pharma was incorporated in 1979 and is headquartered in Ewing, New Jersey.

22. On April 13, 2022, Antares Pharma announced the Proposed Transaction:

> SAN DIEGO and EWING, N.J., April 13, 2022 /PRNewswire/ -- Halozyme Therapeutics, Inc. (NASDAQ: HALO) ("Halozyme") and Antares Pharma, Inc. (NASDAQ: ATRS) ("Antares") today announced that the companies have entered into a definitive agreement pursuant to which Halozyme will acquire Antares for $5.60 per share in cash. The transaction, which values Antares

at approximately $960 million, was unanimously approved by both the Halozyme and Antares Boards of Directors.

The transaction is expected to be immediately accretive to Halozyme's 2022 revenue and non-GAAP earnings and to accelerate top- and bottom-line growth through 2027, with multiple growth drivers beyond 2027. The combination of Halozyme and Antares will create a leading drug delivery and specialty product company. The Antares business consists of a best-in-class, differentiated, royalty revenue generating auto injector platform business that offers broad licensing opportunity, and a commercial business, with three proprietary commercial products.

"The addition of Antares, particularly with its best-in-class auto injector platform and specialty commercial business, augments Halozyme's strategy, further strengthens our position as a leading drug delivery company and extends our strategy to include specialty products," said Dr. Helen Torley, president and chief executive officer of Halozyme. "The acquisition of Antares fits well with our previously discussed strategic priorities and provides substantial financial growth potential and disruptive solutions to significantly improve patient experiences and outcomes for emerging and established therapies. Halozyme is well-positioned to leverage Antares' value proposition, driven by a strong balance sheet, established industry relationships and business development experience. We look forward to welcoming Antares' talented team as we embark on our next chapter of accelerating financial growth, maximizing patient benefit, and enhancing value."

Robert F. Apple, president and chief executive officer of Antares, commented, "We are pleased to have reached this agreement with Halozyme, as this transaction showcases the value of Antares' highly complementary business, provides our shareholders with attractive and certain value, and brings together industry-leading expertise and drug delivery platforms to accelerate growth and create new opportunities. As we remain committed to continuing to serve our partners, I would like to thank our employees for their hard work and dedication to this mission. We look forward to working with the Halozyme team to complete the transaction and deliver best-in-class therapies and drug delivery solutions."

**Compelling Financial and Strategic Benefits**

- **Immediate Revenue and Non-GAAP Earnings Accretion and Long-Term Financial Upside:** The transaction is expected to be immediately accretive to Halozyme's 2022 revenue and non-GAAP earnings, supported by Antares' proprietary product revenues, royalty revenues and profitability. The addition of Antares is also expected to accelerate top- and bottom-line growth and enhance cash flow generation through 2027, increasing Halozyme's flexibility to pursue further growth drivers in the forms of new product and therapy launches, and partnerships.
- **Business Development to Augment Long-Term Growth, Consistent with Strategic Priorities:** The addition of Antares' commercial products and existing auto injector capabilities accelerate Halozyme's strategy to drive long-term, durable revenue growth and value creation through focused external growth. Halozyme expects to build on Antares' core platform technology and capabilities to drive incremental, durable revenue opportunities with additional intellectual property protections for Antares technology in place beyond 2030.
- **Substantial Market Expansion Opportunity in High Revenue Segments:** Antares' successful development and partnership of its technology platforms offers a widely licensable product suite that can be broadly applied across a spectrum of market segments representing multiple tens of billions of dollars[1] in estimated peak sales. This includes the potential for conversion to both high-viscosity and high-volume auto injector devices, supported by Halozyme's extensive infrastructure and commercially validated ENHANZE platform technology.
- **High Growth, Durable Commercial Franchise with Proven Track Record:** Antares' suite of FDA-approved, high quality commercial products and partner products utilizing the Antares auto injector technology have already demonstrated commercial success and are positioned for long-term growth. Launch of Tlando™ will leverage existing testosterone commercial infrastructure and capabilities in a growing therapeutic category, building on momentum created by Xyosted®'s success.
- **Two Highly Complementary Platforms, Each with Meaningful Pipelines:** Antares' broadly applicable, differentiated auto injector platform is suitable for use with a broad range of medications. The versatility of this platform enables a highly licensable business with significant revenue upside. The combined entity will be able to leverage its deep industry expertise and existing commercial infrastructure in the U.S. to expand delivery capabilities and pursue growth opportunities within multiple small- and large-molecule products.

Transaction Terms, Financing and Time to Closing

> Under the terms of the merger agreement, Halozyme will commence a cash tender offer to acquire all of the outstanding shares of Antares for $5.60 per share in cash. The transaction is not subject to a financing condition. Halozyme intends to finance the transaction using existing cash on hand and new sources of debt. Following completion of the transaction, Halozyme expects to maintain a strong balance sheet with less than 3.5x net debt-to-EBITDA ratio at the time of transaction close. Net debt-to-EBITDA ratio is expected to decline significantly in the quarters post transaction close. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the total number of Antares' outstanding shares of common stock, the expiration or termination of the HSR waiting period, and other customary conditions. Following the successful completion of the tender offer, Halozyme will acquire all remaining shares not tendered in the tender offer through a second-step merger at the same price. This transaction is expected to close in the first half of 2022.
>
> BofA Securities and Wells Fargo Securities LLC are acting as financial advisors to Halozyme and Weil, Gotshal & Manges LLP is acting as legal advisor. Jefferies LLC is acting as financial advisor to Antares and Skadden, Arps, Slate, Meagher & Flom LLP is acting as legal advisor.

\* \* \*

23. It is therefore imperative that Antares Pharma's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

B. **The Materially Incomplete and Misleading Solicitation Statement**

24. On April 26, 2022, Antares Pharma filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's

stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Company Financial Projections*

25. The Solicitation Statement fails to provide material information concerning financial projections by Antares Pharma management and relied upon by the financial advisors in their analyses. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Antares Pharma management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26. For the Projections prepared by Company management for Antares Pharma for fiscal years 2022 through 2026, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: (a) EBIT; and (b) Unlevered Free Cash Flow, but fails to disclose a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G.

27. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

30. Further, the Solicitation Statement fails to disclose the risk adjustments made in preparation of the Company Projections, and why no non-risk-adjusted projections were disclosed.

*Omissions and/or Material Misrepresentations Concerning Jefferies's Financial Analyses*

31. With respect to Jefferies' *Selected Public Companies Analysis*, The Solicitation Statement fails to disclose the financial metrics and multiples for each comparable company selected by Jefferies in the analysis.

32. With respect to Jefferies' *Selected Precedent Transactions Analysis*, The Solicitation Statement fails to disclose the financial metrics and multiples for each transaction selected by Jefferies in the analysis.

33. With respect to Jefferies' *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the net operating loss carryforwards of the Company; (ii) the inputs and assumptions underlying the perpetual growth rates of (10.0%) to (20.0%); (iii) the inputs and assumptions underlying the use of discount rates ranging from 9.2% to 10.2%; and (iv) the implied terminal value of the Company.

34. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender his shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

37. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

38. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

39. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

40. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

41. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

42. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

<u>**COUNT II**</u>
**Violations of Section 14(d)(4) of the Exchange Act and
Rule 14d-9 Promulgated Thereunder
(Against All Defendants)**

43. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

44. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

45. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

46. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

47. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

48. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

49. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of Antares Pharma within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Antares Pharma, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Antares Pharma, including the

14

content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Antares Pharma, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

53. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: April 27, 2022                                          **MELWANI & CHAN LLP**

                                                               /s *Gloria Kui Melwani*

>Gloria Kui Melwani (GM5661)
>1180 Avenue of the Americas
>New York, New York 10036
>Tel: (212) 382-4620
>Email: gloria@melwanichan.com
>
>*Attorneys for Plaintiff*

17